Here, Mr. Doe has completed his college education and wants only his diploma; he does not ask to attend graduation. While he has been accepted to a graduate program and the loss of an immediate opportunity to enroll is agonizing, that loss is not irreparable, even if he studies at a different university. The gap on which he focuses attention happens normally in the lives of many students, who take a year to decide what to do after college, to travel, to become a ski bum, to get work experience, and the like. Such a year does not automatically raise a red flag or cause difficult questions from a future graduate school or employer, especially if Mr. Doe puts it to good use. Under these circumstances, the cases on which Mr. Doe relies are inapposite because they address a gap in an ongoing course of study and not one between college and graduate school. For these reasons, the Court concludes that Mr. Doe has not demonstrated the likelihood of irreparable injury without a preliminary injunction. See Winter , 555 U.S. at 22, 129 S.Ct. 365 ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction.").
3. Balance of Harms
From the perspective of Mr. Doe, a college student, the equities are on his side because "[i]t costs the University nothing to confer" his degree and he cannot enter graduate school without it. Mot. PI at 43. The argument is not entirely convincing. While GW is a private university, it receives federal grants and is liable to the federal Department of Education (DOE) if it fails to comply with DOE's directives concerning sexual harassment policies and enforcement. GW also decries the injury to its institutional credibility if a court order compelled it "to misrepresent to the world that plaintiff has satisfied" the University's graduation requirements and overrode the University's right to conduct its disciplinary and academic business autonomously. Opp'n at 42-43.
The decision of the D.C. Court of Appeals in Alden v. Georgetown Univ. , 734 A.2d 1103 (D.C. 1999), only supports this argument in part: the court found that by issuing a diploma, "a school ... certifies to society that a student is well-versed in all of the knowledge and skills required by his or her chosen profession." Id. at 1109. However, Alden is clear that judicial deference is accorded to a university's academic decisions but not to its decisions on alleged student misbehavior. While GW is a private school and not required to assure *136 constitutional due process to its student body as would a public university, it must fulfill obligations to its students that are deemed to be contractual in nature, as here. See, e.g., Basch , 370 A.2d at 1367 ("All of the parties ... admit what is a general rule-that the relationship between a university and its students is contractual in nature. It is also accepted that the terms set down in a university's bulletin become a part of that contract.").
Each of these harms has been argued in different cases on different facts. On balance, recognizing the delay in Mr. Doe's graduate education even if he is innocent of Ms. Roe's charge and his likelihood of success on part of his contract claim, the Court finds that the University's institutional interest is outweighed by its student's interests. The balance of harms thus favors a preliminary injunction.
4. Public Interest
Mr. Doe argues that it is clearly in the public interest for students to be treated fairly in university disciplinary processes. GW argues that the public interest favors a university's "being able to independently investigate and, when appropriate, discipline, its students for misconduct." Opp'n at 44. The Court agrees that both parties identify a strong public interest. At this point in the litigation, and on the current record, the parties' arguments regarding the public interest are equal and neither overcomes the other. The public interest does not support a preliminary injunction.
Mr. Doe has not demonstrated that he is entitled to preliminary injunctive relief. His motion for a preliminary injunction will be denied.
B. Motion in Limine to Preclude Introduction of E.E.'s Phone Records
Pursuant to an order of the Court, Mr. Doe obtained by subpoena the cellphone records of the witness E.E. to ascertain whether E.E. made or received any phone calls while Ms. Roe and Mr. Doe were traveling in the Uber. See 3/16/2017 Minute Order. Mr. Doe moves to introduce these records into evidence in this case; during the Court's hearing on the preliminary injunction on April 12, 2018, his counsel argued that because the records show that E.E. neither made nor received any calls during that time, her testimony before the panel that she spoke to Ms. Roe on the phone, and that Ms. Roe slurred her speech and sounded incoherent during the Uber ride, was not credible. He further argues that this alleged telephone conversation was the only evidence that Mr. Doe should have known how drunk Ms. Roe was or should have known that Ms. Roe could not consent to sex; without it, he contends, there is no evidence that he should have known her condition. GW argues that even if the subpoenaed phone records now suggest that E.E.'s testimony was not credible, the records were not presented to the hearing panel and are irrelevant to Mr. Doe's legal claims regarding the fairness of the process.
It is true that the cellphone records do not pertain to the Court's review of the fairness and reasonableness of the hearing panel's decision at the time . However, the Court finds the cellphone records to be relevant to this case because they may be found to support Mr. Doe's contention that he is actually innocent of the behavior for which he was suspended. See, e.g. , Yusuf , 35 F.3d at 715 (establishing that, to prevail on the "erroneous outcome" theory of Title IX liability, a student must demonstrate that he was not responsible for the conduct in question). Thus, now that the cellphone records have been obtained, they are relevant to Mr. Doe's appeal. The phone records will be admitted into evidence and GW's motion in limine will be denied.
*137 IV. CONCLUSION
For the foregoing reasons, Mr. Doe's Motion for a Preliminary Injunction, Dkt. 6, will be denied. GW's Motion in Limine to Preclude Introduction of E.E.'s Phone Records, Dkt. 23, will be denied. The Court will order expedited discovery and briefing in this case, so that this matter can be resolved before the passage of time renders it nearly moot. The Court will convene a prompt status conference for that purpose.